# Exhibit B

Common Pleas of Philadelphia County
Trial Division

# Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **JULY 2024** | |
| E-Filing Number: 2407040061 | **02013** |

INDIVIDUALLY AND BY AND
...IAN

...20

DEFENDANT'S NAME
UNIVERSAL HEALTH SERVICES, INC

...AME

DEFENDANT'S ADDRESS
4641 ROOSEVELT BLVD
PHILADELPHIA PA 19124

PLAINTIFF'S ADDRESS

DEFENDANT'S NAME
FOUNDATIONS BEHAVIORAL HEALTH

DEFENDANT'S ADDRESS
833 E BUTLER AVE
DOYLESTOWN PA 18901

PLAINTIFF'S NAME

PLAINTIFF'S ADDRESS

DEFENDANT'S NAME
USH OF DOYLESTOWN, LLC

DEFENDANT'S ADDRESS
833 E BUTLER AVE
DOYLESTOWN PA 18901

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 18 | |

COMMENCEMENT OF ACTION
- [X] Complaint
- [ ] Writ of Summons
- [ ] Petition Action
- [ ] Transfer From Other Jurisdictions
- [ ] Notice of Appeal

**AMOUNT IN CONTROVERSY**
- [ ] $50,000.00 or less
- [X] More than $50,000.00

**COURT PROGRAMS**
- [ ] Arbitration
- [X] Jury
- [ ] Non-Jury
- [ ] Other:
- [ ] Mass Tort
- [ ] Savings Action
- [ ] Petition
- [ ] Commerce
- [ ] Minor Court Appeal
- [ ] Statutory Appeals
- [ ] Settlement
- [ ] Minors
- [ ] W/D/Survival

CASE TYPE AND CODE
20 - PERSONAL INJURY - OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

FILED
PRO PROTHY

JUL 18 2024

S. RICE

IS CASE SUBJECT TO
COORDINATION ORDER?
YES        NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>CHRISTINE CORRI C.O INDIVIDUALLY</u>
<u>AND BY AND THROUGH HIS LEGAL GUARDI</u>

Papers may be served at the address set forth below.

NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY
BRADLEY D. MOYER

| HONE NUMBER | FAX NUMBER | ADDRESS |
|---|---|---|
| (570)344-1234 | (570)346-9455 | 524 BIDEN STREET<br>SCRANTON PA 18503 |

PREME COURT IDENTIFICATION NO.
319281

NATURE OF FILING ATTORNEY OR PARTY
RADLEY MOYER

E-MAIL ADDRESS
bradley@pisanchyn.com

DATE SUBMITTED
Thursday, July 18, 2024, 04:49 pm

FINAL COPY (Approved by the Prothonotary Clerk)

Court of Common Pleas of Philadelphia County
Trial Division

## Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**JULY 2024**
E-Filing Number: 2407040061

**02013**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| CHRISTINE CORRI C.O INDIVIDUALLY AND BY AND THROUGH HIS LEGAL GUARDIAN | UNIVERSAL HEALTH SERVICES, INC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| 53 PRESIDENT AVE CENTEREACH NY 11720 | 4641 ROOSEVELT BLVD PHILADELPHIA PA 19124 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
|  | FOUNDATIONS BEHAVIORAL HEALTH |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
|  | 833 E BUTLER AVE DOYLESTOWN PA 18901 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
|  | USH OF DOYLESTOWN, LLC |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
|  | 833 E BUTLER AVE DOYLESTOWN PA 18901 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 18 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal<br>[ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

**CASE TYPE AND CODE**

20 - PERSONAL INJURY - OTHER

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? |
|---|---|---|
| FILED PRO PROTHY<br><br>JUL 18 2024<br><br>S. RICE | | YES          NO |

---

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>CHRISTINE CORRI C.O INDIVIDUALLY</u>
<u>AND BY AND THROUGH HIS LEGAL GUARDI</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| BRADLEY D. MOYER | 524 BIDEN STREET SCRANTON PA 18503 |
| **PHONE NUMBER** | **FAX NUMBER** | |
| (570)344-1234 | (570)346-9455 | |
| **SUPREME COURT IDENTIFICATION NO.** | **E-MAIL ADDRESS** |
| 319281 | bradley@pisanchyn.com |
| **SIGNATURE OF FILING ATTORNEY OR PARTY** | **DATE SUBMITTED** |
| BRADLEY MOYER | Thursday, July 18, 2024, 04:49 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

COMPLETE LIST OF DEFENDANTS:

1. UNIVERSAL HEALTH SERVICES, INC
      4641 ROOSEVELT BLVD
      PHILADELPHIA PA 19124
2. FOUNDATIONS BEHAVIORAL HEALTH
      833 E BUTLER AVE
      DOYLESTOWN PA 18901
3. USH OF DOYLESTOWN, LLC
      833 E BUTLER AVE
      DOYLESTOWN PA 18901
4. UHS OF DELAWARE, INC
      4641 ROOSEVELT BLVD
      PHILADELPHIA PA 19124
5. AMY SMITH
      833 E BUTLER AVE
      DOYLESTOWN PA 18901
6. DONNA PUTIGNANO
      833 E BUTLER AVE
      DOYLESTOWN PA 18901
7. JOHN DOE 1
      NA
      NA PA NA
8. JOHN DOE 2
      NA
      NA PA NA
9. JOHN DOE 3
      NA
      NA PA NA
10. JOHN DOE 4
      NA
      NA PA NA
11. JOHN DOE 5
      NA
      NA PA NA
12. JOHN DOE 6
      N
      NA PA NA
13. JOHN DOE 7
      NA
      NA PA N
14. JOHN DOE 8
      NA
      NA PA NA
15. JOHN DOE 9
      NA
      NA PA NA
16. JOHN DOE 10
      NA
      NA PA NA
17. JOHN DOE 11
      NA
      NA PA NA
18. JOHN DOE 12
      NA
      NA PA NA

**Supreme Court of Pennsylvania**
Court of Common Pleas
Civil Cover Sheet

Philadelphia _____ County

| For Prothonotary Use Only: |
| --- |
| Docket No: |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action:**
☒ Complaint ☐ Writ of Summons ☐ Petition
☐ Transfer from Another Jurisdiction ☐ Declaration of Taking

| Lead Plaintiff's Name: C.O., Individually and by and through his Legal Guardian, Christine Corrigan | Lead Defendant's Name: Universal Health Services, Inc et al |
| --- | --- |

Are money damages requested? ☒ Yes ☐ No.

Dollar Amount Requested: ☐ within arbitration limits
(check one) ☒ outside arbitration limits

Is this a *Class Action Suit?* ☐ Yes ☒ No    Is this an *MDJ Appeal?* ☐ Yes ☒ No

Name of Plaintiff/Appellant's Attorney: Douglas A. Yazinski, Esquire

☐ Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE.* If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
☐ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☒ Premises Liability
☐ Product Liability *(does not include mass tort)*
☐ Slander/Libel/ Defamation
☐ Other:

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort - DES
☐ Toxic Tort - Implant
☐ Toxic Waste
☐ Other:

**PROFESSIONAL LIABLITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional:

**CONTRACT** *(do not include Judgments)*
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☐ Debt Collection: Other

☐ Employment Dispute: Discrimination
☐ Employment Dispute: Other

☐ Other:

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☐ Mortgage Foreclosure: Residential
☐ Mortgage Foreclosure: Commercial
☐ Partition
☐ Quiet Title
☐ Other:

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Statutory Appeal: Other

☐ Zoning Board
☐ Other:

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☐ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations Restraining Order
☐ Quo Warranto
☐ Replevin
☐ Other:

*Updated 1/1/2011*

Case ID: 240702013

Pisanchyn Law Firm
Bradley D. Moyer, Esquire
I.D. # 319281
524 Biden Street
Scranton, Pa 18503
(570) 344-1234



Filed and Attested by the
Office of Judicial Records
18 ... ... pm
RICE
Attorney for Plaintiff

### IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### CIVIL TRIAL DIVISION

C.O., Individually and, By and Through his :    Civil Action – Law
Legal Guardian, Christine Corrigan,    :    Docket No.
                                 :
          Plaintiff,        :
v.                                :
                                  :
Universal Health Services, Inc.;       :
Foundations Behavioral Health;       :
UHS of Doylestown, LLC;           :
UHS of Delaware, Inc.;             :
Amy Smith, Donna Putignano; and    :
John Does 1-12,                 :
          Defendants.      :      **Jury Trial Demanded**

### NOTICE

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE
CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION
WITHIN 20 DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY
ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND
FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO
THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL
TO DO SO, THE CASE MAY PROCEED WITHOUT YOU AND THE COURT WITHOUT
FURTHER NOTICE MAY ENTER A JUDGMENT AGAINST YOU FOR ANY MONEY
CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF
REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR
OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT
HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE
OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO
PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER
LEGAL SERVICES TO ELIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Case ID: 240702013

LAWYER EFERRAL SERVICE
Philadelphia Bar Association
1101 Market Street
11th Floor
Philadelphia PA 19107
215-238-6333

ADVISO

Le han demandado a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las paginas siquientes, usted tiene veinte (20) dias de plazo al partir de la fecha de lan demanda y la notificacion.  Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion.  Ademas, la corte puede decidir a favor del demandante y require que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder dinero o sus propiendandes u otros derechos importantes para usted.  LLEVE ESTA DEMANDA A UN ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIOI, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUY A DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA FINGERAL.
ASOCIACION DE LICENCIADOR DE PHILADELPHIA
VICIO DE REFERENCIA DE INFORMACION FINGERAL
1101 MARKET STREET,
11TH FLOOR
PHILADELPHIA, PENNSYLVANIA 19107
TELEFONO: (215) 238-1701

Case ID: 240702013

Pisanchyn Law Firm
Bradley D. Moyer, Esquire
I.D. # 319281
524 Biden Street
Scranton, Pa 18503
(570) 344-1234                                          Attorneys for Plaintiff

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

|  |  |  |
|---|---|---|
| C.O., Individually and, By and Through his | : | Civil Action – Law |
| Legal Guardian, Christine Corrigan, | : | Docket No. |
|  | : |  |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| Universal Health Services, Inc.; | : |  |
| Foundations Behavioral Health; | : |  |
| UHS of Doylestown, LLC; | : |  |
| UHS of Delaware, Inc.; | : |  |
| Amy Smith, Donna Putignano; and | : |  |
| John Does 1-12, | : |  |
| Defendants. | : | **Jury Trial Demanded** |

## COMPLAINT

AND NOW COMES the Plaintiff by and through The Pisanchyn Law Firm and their

undersigned Counsel, Bradley D. Moyer, Esquire, and aver as follows:

1. Plaintiff, "C.O." at all times relevant to the below facts was nineteen (19) years of age.

2. Plaintiff avers that good cause exists for Plaintiff to use a pseudonym. The facts alleged

   in this Complaint are gruesome and disturbing, and would have a disparaging effect were

   their identity disclosed. Undersigned Counsel will provide the identity of Plaintiff to the

   Defendant. Defendant suffers no prejudice as a result of Plaintiff's identity not being

   stated herein the Complaint and Verification, which are public documents and would

   only serve to humiliate the Plaintiff further.

3. Plaintiff, Christine Corrigan, is the parent, and legal Guardian of Plaintiff, C.S.

Case ID: 240702013

4. Defendant, Universal Health Services, Inc., is a corporation duly operating and doing business under the laws of the Commonwealth of Pennsylvania that regularly conducts substantial, systematic, and continuous business in Philadelphia County, and has a corporate address, office, and/or usual place of business at 4641 Roosevelt Blvd, Philadelphia, PA 19124, 561 Fairthorne Ave, Philadelphia, PA 19128, and/or 367 South Gulph Road, King of Prussia, PA 19406.

5. Defendant, Foundations Behavioral Health, is a corporation duly operating and doing business under the laws of the Commonwealth of Pennsylvania that regularly conducts substantial, systematic, and continuous business in Philadelphia County, and has a corporate address, office, and/or usual place of business at 833 E Butler Ave, Doylestown, PA 18901

6. Defendant, UHS of Doylestown, LLC, is a corporation duly operating and doing business under the laws of the Commonwealth of Pennsylvania that regularly conducts substantial, systematic, and continuous business in Bucks County, and other counties in Pennsylvania, and has a corporate address, office, and/or usual place of business at 833 E Butler Ave, Doylestown, PA 18901.

7. Defendant, UHS of Delaware, Inc., is a corporation duly operating and doing business under the laws of the Commonwealth of Pennsylvania that regularly conducts substantial, systematic, and continuous business in Bucks County, and other counties in Pennsylvania, and has a corporate address, office, and/or usual place of business at 4641 Roosevelt Blvd, Philadelphia, PA 19124, 561 Fairthorne Ave, Philadelphia, PA 19128, and/or 367 South Gulph Road, King of Prussia, PA 19406.

Case ID: 240702013

8.  Defendants, Universal Health Services, Inc., USH of Doylestown, LLC, and USH of Delaware, Inc. herein after will be referred to as the "UHS Defendants."

9.  Defendant, Amy Smith, is/was the Chief Executive Officer of Defendant, Foundations Behavioral Health, and has a corporate address, office, and/or usual place of business at 833 E Butler Ave, Doylestown, PA 18901.

10. Defendant, Donna Putignano, is/was the Senior Director of Behavioral Services of Defendant, Foundations Behavioral Health, and has a corporate address, office, and/or usual place of business at 833 E Butler Ave, Doylestown, PA 18901.

11. The Defendant, John Doe 1, designation is averred to be fictitious.

12. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 1, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

13. It is averred Defendant, John Doe 1, is/was a person whom committed the acts set forth more fully below upon Plaintiff, is identified within the Justice Center report outlined more fully below as "subject," "subjects", and at all times relevant to this cause of action was an employee, agent, and/or resident at Defendants' facilities where/when this incident occurred.

14. The Defendant, John Doe 2, designation is averred to be fictitious.

15. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 2, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

16. It is averred Defendant, John Doe 2, is/was a person whom committed the acts set forth more fully below upon Plaintiff, is identified within the Justice Center report outlined

Case ID: 240702013

more fully below as "subject," "subjects", and at all times relevant to this cause of action was an employee, agent, and/or resident at Defendants' facilities where/when this incident occurred.

17. The Defendant, John Doe 3, designation is averred to be fictitious.

18. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 3, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

19. It is averred Defendant, John Doe 3, is/was a person whom committed the acts set forth more fully below upon Plaintiff, is identified within the Justice Center report outlined more fully below as "subject," "subjects", and at all times relevant to this cause of action was an employee, agent, and/or resident at Defendants' facilities where/when this incident occurred.

20. The Defendant, John Doe 4, designation is averred to be fictitious.

21. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 4, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

22. It is averred Defendant, John Doe 4, is/was a person whom committed the acts set forth more fully below upon Plaintiff, is identified within the Justice Center report outlined more fully below as "subject," "subjects", and at all times relevant to this cause of action was an employee, agent, and/or resident at Defendants' facilities where/when this incident occurred.

23. The Defendant, John Doe 5, designation is averred to be fictitious.

Case ID: 240702013

24. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 5, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

25. It is averred Defendant, John Doe 5, is/was a person whom was the supervisor, manager, investigator, and/or overseer of Defendants, John Does 1-4, and at all times relevant to this cause of action was an employee/agent at Defendants' facilities where/when this incident occurred, and had the duties and responsibility to oversee, manage, care for, and supervise the employees, agents, and residents at Defendants facility.

26. The Defendant, John Doe 6, designation is averred to be fictitious.

27. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 6, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

28. It is averred Defendant, John Doe 6, is/was a person whom was the supervisor, manager, investigator, and/or overseer of Defendants, John Does 1-4, and at all times relevant to this cause of action was an employee/agent at Defendants' facilities where/when this incident occurred, and had the duties and responsibility to oversee, manage, care for, and supervise the employees, agents, and residents at Defendants facility.

29. The Defendant, John Doe 7, designation is averred to be fictitious.

30. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 7, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

31. It is averred Defendant, John Doe 7, is/was a person whom was the supervisor, manager, investigator, and/or overseer of Defendants, John Does 1-4, and at all times relevant to

this cause of action was an employee/agent at Defendants' facilities where/when this incident occurred, and had the duties and responsibility to oversee, manage, care for, and supervise the employees, agents, and residents at Defendants facility.

32. The Defendant, John Doe 8, designation is averred to be fictitious.

33. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 8, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

34. It is averred Defendant, John Doe 8, is/was a person whom was the supervisor, manager, investigator, and/or overseer of Defendants, John Does 1-4, and at all times relevant to this cause of action was an employee/agent at Defendants' facilities where/when this incident occurred, and had the duties and responsibility to oversee, manage, care for, and supervise the employees, agents, and residents at Defendants facility.

35. The Defendant, John Doe 9, designation is averred to be fictitious.

36. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 9, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

37. It is averred Defendant, John Doe 9, is/was a corporation/company that owned the location where this incident occurred, and/or employed the below mentioned employees/agents at such facility, and was duly operating and doing business under the laws of the Commonwealth of Pennsylvania that regularly conducts substantial, systematic, and continuous business in Philadelphia County, and other counties in Pennsylvania, in addition to overseeing/directing the Defendants, John Does 1-4, and residents at all times relevant to this cause of action.

Case ID: 240702013

38. The Defendant, John Doe 10, designation is averred to be fictitious.

39. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 10 has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

40. It is averred Defendant, John Doe 10, is/was a corporation/company that owned the location where this incident occurred, and/or employed the below mentioned employees/agents at such facility, and was duly operating and doing business under the laws of the Commonwealth of Pennsylvania that regularly conducts substantial, systematic, and continuous business in Philadelphia County, and other counties in Pennsylvania, in addition to overseeing/directing the Defendants, John Does 1-4, and residents at all times relevant to this cause of action.

41. The Defendant, John Doe 11, designation is averred to be fictitious.

42. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 11, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

43. It is averred Defendant, John Doe 11, is/was a corporation/company that owned the location where this incident occurred, and/or employed the below mentioned employees/agents at such facility, and was duly operating and doing business under the laws of the Commonwealth of Pennsylvania that regularly conducts substantial, systematic, and continuous business in Philadelphia County, and other counties in Pennsylvania, in addition to overseeing/directing the Defendants, John Does 1-4, and residents at all times relevant to this cause of action.

44. The Defendant, John Doe 12, designation is averred to be fictitious.

Case ID: 240702013

45. It is averred that a reasonable search to determine the actual name of Defendant, John Doe 12, has been conducted, and the Defendant's actual name is unknown to the Plaintiff after having conducted a reasonable search with due diligence.

46. It is averred Defendant, John Doe 12, is/was a corporation/company that owned the location where this incident occurred, and/or employed the below mentioned employees/agents at such facility, and was duly operating and doing business under the laws of the Commonwealth of Pennsylvania that regularly conducts substantial, systematic, and continuous business in Philadelphia County, and other counties in Pennsylvania, in addition to overseeing/directing the Defendants, John Does 1-4, and residents at all times relevant to this cause of action.

47. The USH Defendants in Pennsylvania operate ten facilities with over 1,500 licensed beds.

48. The USH Defendants employ over 3,000 behavioral staff at its facilities across the Commonwealth including in Philadelphia County.

49. The USH Defendants lists as their facilities the following facilities and locations within the Commonwealth among others: Fairmount Behavioral Health System in Philadelphia, Foundations Behavioral Health in Doylestown, and Friends Hospital in Philadelphia.

50. The USH Defendants at all times relevant to this cause of action performs for their facilities, and/or directs their facilities how to perform such tasks in the way the USH Defendants require including, but not limited to, hiring/firing, policies/procedures, training, orientation, employee manual, pay/benefits, medical/dental plans, 401(K) with match and discounted stock plan, SoFi Student Loan Refinancing Program, career development opportunities with UHS and its over 300 subsidiaries, tuition reimbursement, review candidate qualifications, perform background checks, perform

Case ID: 240702013

human resources duties, ensure that all Defendant, Universal Health Services, Inc. subsidiaries, including Foundations Behavioral Health, complies with all state, local, and federal regulations for their employees, residents, and facilities.

51. Defendant, Foundations Behavioral Health, is one of the facilities of the USH Defendants.

52. Defendants, Amy Smith and Donna Putignano, are/were at all times relevant to this cause of action responsible for, among other tasks, the oversight, hiring/firing, policies/procedures, training, orientation, employee manual, review candidate qualifications, perform background checks, ensuring the safety of such persons as Plaintiff, perform human resources duties, ensure that all employees/agents at Defendant, Foundations Behavioral Health complies with all state, local, and federal regulations for their employees, residents, and facilities.

53. It is believed, therefore averred, the USH Defendants are a parent company, holding company, and/or similar entity which exists to hold money, property, and donations for the their facilities including the Defendant, Foundations Corporation Defendants.

54. It is believed, therefore averred, Defendants are a for profit business/company, and conducts substantial, systematic, and continuous business in Philadelphia County.

55. On information and belief the Defendants offered residential and other services to children, adolescents, and young adults in Philadelphia County, and surrounding counties, and specifically to the Plaintiff, C.O., in exchange for payment of money.

56. On information and belief, the individuals responsible for the supervision of children, adolescents, and young adults at the Defendants facilities were acting in the course

and scope of his/her/their employment by the Defendants and also acted in furtherance of the Defendants' business interests.

57. The Defendants are vicariously liable for the negligent, reckless, outrageous, and/or grossly negligent conduct of its employees/agents.

58. The Defendants have 24/7 camera surveillance in their facilities/units.

59. The Defendants, and their executive/supervisory employees/agents have access to live feeds of the footage of the 24/7 camera surveillance.

## FACTS

60. C.O. was placed in the UHS Defendants' facility based on the UHS Defendants' advertisements and warranties, and the family believed USH Defendants and their facilities would/could help C.O.

61. The UHS Defendants and their facilities advertise themselves as a facility that specializes in helping children, adolescents and young adults with autism and other developmental disabilities by providing them with a homelike environment in a secure, nurturing setting where they can work on their difficulties.

62. C.O. was a resident of the UHS Defendants' residential treatment facility at Defendant, Foundations Behavioral Health with a history of Autism Spectrum Disorder, Obsessive Compulsive Disorder, Impulse Control Disorder and PICA.

63. The UHS Defendants and their facilities obtained C.O.'s records and then allegedly developed a treatment plan for him.

Case ID: 240702013

64. C.O. was a resident at the UHS Defendants facility when C.O. was violently physically abused by staff members on several occasions, when C.O. should have been under the supervision and care of UHS Defendants and their facilities' staff.

65. During his time at the UHS Defendants' facility, C.O. was violently physically abused on several occasions at the Defendant, Foundations Behavioral Health Facility.

66. C.O. has limited verbal abilities, is intellectual challenged, and therefore was unable to defend himself.

67. On several occasions C.O was pinned, grabbed, pushed, shoved, into walls, doors and chairs along with being bear hugged and retrained by staff members, despite other staff being on duty during this time.

68. As a result of this unfortunate incident involving C.O. at the Defendant, Foundations Behavioral Health, the New York State Justice Center for the Protection of People with Special Needs conducted an investigation that determined the allegations of physical abuse, and deliberate inappropriate restraint was supported.

69. Specifically, an offense of striking was confirmed occurred on or about August 6, 2022, such that C.O. was alleged to have been grabbed and pushed, punched in the face, and swung to the floor by Defendant and/or Defendant's employees/agents.

70. It was also supported that on or about August 2, 2022, C.O. was grabbed and pushed, bear hugged, and pushed to the floor.

71. It was also supported that on or about August 2, 2022, C.O. had applied an unauthorized restraint without rationale.

Case ID: 240702013

72. The investigation also reviewed video footage which captured conduct by Defendants' employee/agent on August 6, 2022, punching C.O. in the face.

73. The investigation reviewed photos of C.O. taken on August 12, 2022, that showed multiple bruises, varying in size and color on C.O.'s chest, arms, legs, and scratch on C.O.'s nose.

74. The investigation reviewed photos of C.O. taken on August 12, 2022, that showed circular bruises, varying in size and color on C.O.'s shoulders, thighs, biceps, triceps, chest, torso area, left forearm, buttocks and panniculus.

75. It is believed, therefore averred, the John Doe Defendant pushed a chair backwards into the right side of C.O.'s upper, and outer thigh/hip area and possibly his knee, three times.

76. The Justice Center found by a preponderance of evidence to support physical abuse by the Defendant, John Doe, MHT, "for pinning, grabbing, pushing, and shoving [C.O.] into the walls, door, and a chair, bear-hugging him, and pushing him to the floor on 08/02/22."

77. The Justice Center also noted that "[a]ccording to Foundations' Investigation Report, 'Due to [C.O.]'s limited verbal and intellectual challenges, [C.O.] was unable to be interviewed to provide any information."

78. The Justice Center also noted that "there was no evidence" that Defendant, John Doe, "was interviewed by Foundations about the abusive physical conduct he displayed on surveillance video or about injuries he noticed on [C.O.] after the incident."

79. The Justice Center also noted, "[s]urveillance video of the Integrity unit on 08/02/22 captures [C.O.] attempting to walk pass," Defendant, John Doe , "in the hallway" and Defendant, John Doe , "grabs [C.O.] by the shoulder/eft bicep and pushes him down the

Case ID: 240702013

hallway and into a wall, causing [C.O.]'s back to hit the wall. He then grabbed [C.O.]'s

left upper arms and pinned him at the doorframe."

80. The Justice Center further notes, Defendant, John Doe , "then shoves [C.O.] on his left

upper arm and right pectoral area into a chair, which results in [C.O.]'s left buttock

hitting the edge of the chair. Shortly after, near the main entrance of the unit," Defendant,

John Doe, "pushes on [C.O.]'s chest and then his rib cage/flank, resulting in the right side

of [C.O.]'s torso and triceps hitting the edge of the wall."

81. The Justice Center further notes, Defendant, John Doe, "then puts [C.O.] in a bear-hug,

wrapping his arms around [C.O.]'s torso and interlocking his hands."

82. The Justice Center further notes, Defendant, John Doe, "then pushes [C.O.] from a

standing position to the floor by his left upper arm. [C.O. places one foot on the floor and

begins to stand with one leg behind his body, in a deep lunge."

83. The Justice Center further notes, Defendant, John Doe, "pushes [C.O.] to the floor again

from this position. Both times, [C.O.] knees and legs hit the floor."

84. The Justice Center further notes, "[s]urveillance video shows that bruises to [C.O.]'s

knees and shin were likely sustained when," Defendant, John Doe, "pushed [C.O.] to the

floor, bruises to [C.O.]'s chest were likely sustained when," Defendant, John Doe, "

pushed [C.O.] near the main entrance, and injuries to [C.O.]'s upper arms were likely

sustained when," Defendant, John Doe , " grabbed, pushed, and pinned [C.O.] to the wall

and doorframe. Therefore, physical abuse is supported . . . ."

85. The Justice Center further notes it found a preponderance of evidence to support

deliberate inappropriate use of restrains against Defendants for applying an unauthorized

restrain on C.O. without rationale on or about August 2, 2022, resulting in injuries to

C.O.'s biceps and panniculus.

86. The Justice Center further notes, there was no evidence Defendants' employees/agents

were interviewed by Defendant, Foundations Behavioral Health, about this conduct,

captured on surveillance video, or about injuries C.O. sustained after the incident.

87. The Justice Center further notes, [s]urveillance video of the Integrity unity on 08/02/22

captures [C.O.] walking about in the main area of the unit. [C.O.] grabs a food tray, and

in response," Defendant, John Doe, "attempts to smack the food tray out of [C.O.]'s

hand, stands behind [C.O.], grabs both of [C.O.]'s biceps/pectoral areas, and places

[C.O.] into a PRT. During this restraint," Defendant, John Doe, "shoved [C.O.] forward

while still restraining [C.O.] in a PRT, which resulted in [C.O.]'s let leg bumping into a

chair with an enough force that the chair, weighing 40 pounds, moves forward. [C.O]

then falls forward onto the chair, while" Defendant, John Doe, "maintains his grip of

[C.O.]'s biceps. [C.O.]'s left thigh, panniculus, and [C.O.] right mid-thigh hits the chair

edges."

88. The Justice Center further notes, "[o]n 08/04/22, two days after incident, photos of

[C.O.]'s midsection document a bruise with brown tones to this panniculus, which is

slightly obscured by an object [C.O.] is holding. On 08/11/22, nine days after the

incident, another photo is taken of the same area captured a cluster of light, circular,

quarter-size bruises with yellow tones, indicating that the bruise was aged. As,"

Defendant, John Doe, "application of an unauthorized PRT caused [C.O.] to hit and fall

onto the chair, deliberate inappropriate use of restrains is supported . . . ."

89. The Justice Center further notes, "found a preponderance of evidence to support physical abuse . . . . for grabbing, and pushing [C.O.] in a door, wall, and plexiglass, punching him in the face three times, and swinging him to the floor on 08/06/22 . . . ."

90. The Justice Center further notes, "[C.O.] was not interviewed as part of Foundations' Infernal Investigation, 'Due to [C.O.]'s limited verbal and intellectual challenges . . . .'"

91. The Justice Center further notes that a Defendant and/or Defendant employee/agent, attempted to stop C.O. from entering a hallway.

92. The Justice Center further notes the Defendant, Foundations Behavioral Health, did not ask what other authorized techniques, if any, were made to redirect C.O., about injuries C.O. sustained after the incident, or address the specifics of abusive conduct captured on surveillance video.

93. The Justice Center further notes, surveillance video of August 6, 2022, captures this incident.

94. The Justice Center further notes that C.O. grips the edge of the wall as [C.O] is pushed on C.O.'s chest and right flank.

95. C.O.'s left forearm/antecubital fossa is then grabbed, as C.O. pulls away in the opposite direction.

96. C.O.'s right pectoral area is then grabbed, and C.O. is pushed away from the hallway, then a closed fist punched C.O. on the left side of his face two times, on after the other.

97. The collar of C.O's shirt is then grabbed, and C.O. is pushed into a closed door.

98. C.O.'s back hits the door, and C.O.'s buttocks hits the metal door handle.

Case ID: 240702013

99. C.O.'s shirt is grabbed again, C.O. is pushed in the pectoral area, away from the hallway, and then C.O. is swung by C.O.'s shirt to the floor, but C.O. was unable to brace themselves.

100.    C.O.'s right bicep and underarm were then grabbed, and C.O. was pushed backwards into he wall, then forcibly pressed C.O.'s forearm against C.O.'s chest, pinning C.O. against the wall.

101.    As C.O. attempted to pivot their body away, C.O.'s right shoulder was grabbed, which caused the left side of C.O.'s face, shoulders, and chest to be pushed against the plexiglass.

102.    C.O. then attempts to stand from a chair, but C.O. is pushed in the upper left back, bending C.O. over the chair.

103.    As C.O. attempts to run around, C.O.'s left flank is pushed and then C.O.'s left shoulder grabbed and pushed away.

104.    C.O.'s shoulders are then pushed, and then on C.O.'s chest, C.O. falls backwards into the chair, and C.O.'s left forearm hits the edge of the door frame as C.O. attempts to catch his balance.

105.    C.O. then stands, and then is pushed back, causing C.O. to trip over the chair and fall on the floor onto all fours.

106.    Photos taken on August 11, 2022, five days after the incident, showed that C.O. sustained a cluster of quarter-sized, circular bruises on their chest, biceps, triceps, which were sustained as a result of the above mentioned grabbing, pushing, and pinning of C.O.

Case ID: 240702013

107.    Circular, tennis ball-sized bruises on C.O.'s right buttock were sustained when C.O. was pushed backwards into the door, where C.O.'s buttock hit the metal door handle.

108.    The Justice Center further states, "physical abuse is supported" for the above mentioned incident.

109.    The Justice Center found as a "systemic issue," that "Foundations' investigation did not conduct through interviews of all subjects and potential witnesses."

110.    Specifically, while Defendants engaged in abusive interactions with C.O., and other Defendants, and/or employees/agents of Defendants, were in a position to observe the abusive interactions with C.O., and at times would assist, neither were interviewed.

111.    Additionally, Defendant, Foundations Behavioral Health, did not ask what Defendants did to redirect C.O., about injuries C.O. sustained, or about the abusive conduct captured on surveillance video.

112.    These interviewing failures prevented Defendant, Foundations Behavioral Health, from establishing staff members' accounts of the incident, their roles, observations, C.O.'s resulting injuries, and delayed the care/treatment C.O. so needed following these incidents.

113.    Defendants also failed to ensure that their staff/employees/agents conducted daily body maps on C.O. as ordered by the Foundations' Medical Team, and policies/procedures at Defendants' facilities.

114.    Body maps were not completed on August 5, 2022, or between August 7, 2022, to August 10, 2022, among others, which prevented C.O. from getting timely medical care/treatment, prevented timely mandatory reporting, and directly caused C.O.'s injuries

to made worse and/or continue longer than necessary without appropriate timely medical care.

115.   Upon information and belief, the director, manager, and supervisor shall be responsible for administration and management of the facility, including the safety and protection of those within the facilities such as Plaintiff.

116.   Because of the UHS Defendants, and Foundations Corporation Defendant and its staff's failure to adequately care for/supervise C.O. they failed to prevent the acts of physical violence committed by/on the young adult.

117.   When C.O. received medical care following this incident it noted the physical encounters endured.

118.   C.O. continues to feel the effects of the trauma that occurred during their time at the UHS Defendants, and Foundations Corporation Defendant facility even to present day. It affects C.O.'s psychiatric health as well as their public demeanor among other aspects.

119.   These excruciating acts occurred while C.O. was in the "care" of the UHS Defendants, and Foundations Corporation Defendant, and on its property.

120.   During the time period that C.O. was subjected to these acts, the staff at the UHS Defendants, and Foundations Corporation Defendant did not protect C.O.

121.   The UHS Defendants, and Foundations Corporation Defendant's staff members physically abused their residents, instead of caring for who depended on them.

Case ID: 240702013

122.    During this time period the UHS Defendants, and Foundations Corporation Defendant, and its staff specifically knew, or should have known, C.O. was being physically/verbally abused and did absolutely nothing to prevent any and/or all of it to stop the conduct.

123.    During the time period that C.O was subjected to these acts, the UHS Defendants, and Foundations Corporation Defendant was aware of the specialized needs of the these individuals, such as C.O., which were in its care; however, the UHS Defendants, and Foundations Corporation Defendant failed to employ appropriately trained staff.

124.    During the time period that C.O was being subjected to these acts, the management staff at the UHS Defendants, and Foundations Corporation Defendant failed to supervise the staff that was to protect C.O.

125.    At all times pertinent hereto, Defendants took an active part, and/or made a substantial contribution, in the commission of this tort upon C.O by in through the herein mentioned actions, and/or inactions to prevent the harm after having actual knowledge of the dangerous condition that caused C.O's injuries.

126.    During the time period that C.O was subjected to these acts the UHS Defendants, and Foundations Corporation Defendant failed to perform its duty to care for these individuals such as C.O., to manage its staff, to create policies and procedures to protect those such as C.O., and to enforce those policies and procedures.

127.    During the time period that C.O was subjected to these acts, the UHS Defendants, and Foundations Corporation Defendant, along with all Defendants was aware of the

Case ID: 240702013

specialized needs of the residents which were in its care; however, an insufficient number

of staff to care for the residents/patients were scheduled to allow for the needs of the

individuals such as C.O..

128.     Prior to Plaintiff's incident, the Defendants were on notice complaints as outlined

herein, knew of instances where staff was doing things that would put individuals such as

Plaintiff C.O. at risk but did nothing or very little to prevent the continued pattern which

led to C.O.'s injuries.

129.     Prior to Plaintiff's incidents that form the basis of this action, Defendants,

Universal Health Services, Inc., and Foundations Behavioral Health, have had prior

issues with the facilities similar to what happened to Plaintiff that put Defendants on

notice to the reckless, outrageous, and/or grossly negligent conduct of its

employees/agents.

130.     Once such prior incident was around January of 2019, where Defendants and their

employees/agents were alleged in the lawsuit to have caused injuries/harm to a young

individual that was captured on Defendants' 24/7 video surveillance feed where the

Defendants' employees/agents, through a series of incidents, forcefully grabbed the

young individual by the arm, shoved them in the back, pushed them down, and eventually

spanked him.

131.     Another such incident allegedly occurred between October 2001 and January of

2002 where it was alleged Defendant, Foundations Behavioral Health, was negligent in

the hiring, supervising, and failing to promptly report a Foundations employee that

caused assaults on three (3) patients and Foundations should have supervised the

employee more carefully or ensured they were not left alone with residents, similar to what happened here with Plaintiff.

132.    Defendants were also on further prior notice of issues with their staffing and employees when it was alleged Defendants' employees physically assaulted students at Defendants' facility, and broke one's arm, in January of 2016.

133.    All of which put Defendants on actual notice there were severe issues with their staffing, training, oversight, hiring, policies/procedures, and similar that to not rectify such prior to Plaintiff's incident was reckless, willful, wanton, and grossly negligent.

134.    Prior to Plaintiff's incident, Defendants and/or its corporate subsidiary and/or partners, including its executives and/or employees, workers, had or should have had documentation identified as an individualized service plan which was specifically created to advise C.O.'s caregivers of requirements of his care, including but not limited to the dangers that C.O. could not protect himself against.

135.    C.O.'s plan must contain services and training that meet the young adult's needs, including the young adult's needs for safety, competency development and permanency.

136.    The Defendants violated all laws applicable to caring for young adults such as C.O.

137.    As a result of Defendants' failures, C.O suffered serious physical and psychological abuse over an extended period of time that continue to ail him to this day.

138.    The UHS Defendants, and Foundations Behavioral Health Defendant, have repeatedly been found, and alleged through lawsuits, not to be in compliance with state rules and regulations relating to their treatment facility, and safety of residents.

Case ID: 240702013

139.　　This was all prior knowledge/intent of the Defendants what was happening at their facilities before Plaintiff's incident(s) outlined herein.

140.　　These violations and lawsuits include, but are not limited to, improper record/time keeping, failing to monitor and update treatment plans, failing to conduct required background checks of employees, and unfortunately even abuse of the residents by staff members.

141.　　Because these allegations pre-date Plaintiff's incidents, Defendants were on actual notice of issues with, among other aspects, their staffing, hiring/firing, monitoring of residents, background checks of employees, understaffing/overworked, and allegations of abuse/neglect of residents.

142.　　All of which placed the Defendants on notice of their reckless behavior, and that of their agents/employees.

## COUNT ONE – NEGLIGENCE

143.　　The allegations contained within the foregoing Paragraphs, as well as all paragraphs of the Complaint are incorporated as if fully set forth herein at length.

144.　　At all times material and relevant to this case, the Defendants acted by and through its duly authorized employees, workers, and agents.

145.　　The Defendants owed C.O a duty to protect them while they was under its care.

146.　　The Defendants owed C.O a duty to monitor their interactions with other people at the facility while they were there.

147.　　Defendants owed C.O a duty to monitor the behavior of other staff as they interacted with C.O and each other.

Case ID: 240702013

148.    Defendants owed C.O a duty to ensure there was adequate security for their own safety.

149.    Defendants owed C.O a duty to ensure that all persons providing services within its facility were competent and adequately trained to provide those services.

150.    Defendants owed a duty to C.O to formulate, adopt, and enforce adequate rules and policies to ensure adequate care and treatment for their young adults.

151.    At all times relevant and material hereto, Defendants owed to the C.O a duty to have written policies and/or procedures which require its employees to review individualized service plans, and/or follow those plans, especially knowing that the persons that are under Defendants' watch, supervision, and care are the type that cannot care for themselves.

152.    At all times relevant and material hereto, Defendants owed to the C.O a duty to have all policies and procedures in writing.

153.    At all times relevant and material hereto, the Defendants owed to C.O a duty to follow all plans of correction, protocols, and similar approved by any state agency.

154.    At all times relevant and material hereto, the Defendants owed to the C.O. a duty to have followed all written policies and procedures.

155.    At all times relevant and material hereto, the Defendants owed to C.O a duty to have policies and procedures in place to ensure its employees have the experience, knowledge, reliability, skill set, responsibility, licenses, certificates, and/or training to do the job and be sure Plaintiff C.O was kept safe.

Case ID: 240702013

156.    At all times relevant and material hereto, the Defendants owed to the C.O a duty to have policies and procedures in place which would discover non-reporting of incidents within the residential treatment facility.

157.    At all times relevant and material hereto, the Defendants owed to the C.O a duty to have policies and procedure in place which would have led to the discovery of dangers, including but not limited to those outlined herein that could seriously injure to C.O within the residence.

158.    At all times relevant and material hereto, the Defendants owed to the C.O a duty to properly monitor persons such as C.O who could not help themselves.

159.    At all times relevant and material hereto, Defendants owed to the C.O a duty to have been continuously alert to have perceived any warning of danger that was reasonably likely to exist, as well as a duty to have its employees aware of the dangers that were or could be present under the circumstances and be attentive to any conditions whereby C.O could be taken advantage of.

160.    At all times relevant and material hereto, Defendants, and employees owed to the C.O a duty to have sufficient staff at the facility so that all duties at the Defendants' facilities could be done safely and without putting the residents such as C.O in danger.

161.    At all times relevant and material hereto, Defendants owed to the C.O a duty to not cause him abuse and/or any other and/or additional harms.

162.    At all times relevant and material hereto, Defendants owed to C.O a duty to notify the authorities immediately upon discovering they were harmed in any way and especially by a staff member after the first time.

163.    At all times relevant and material hereto, Defendants owed to C.O a duty to not

leave them in the same place with the same persons knowing C.O. would be assaulted

again.

164.    At all times relevant and material hereto, Defendants owed to C.O a duty to be

sure persons that were around C.O. alone did not have propensities, that were or should

have previously been, known to commit acts such as the ones stated here in this

Complaint.

165.    At all times relevant and material hereto, Defendants owed to the C.O.  a duty to

have a policy or atmosphere which in essence stated "see something say something," as

opposed to the complete opposite.

166.    At all times relevant and material hereto, Defendants owed to C.O. a duty to not

allow its staff to let C.O. to be continually abused and/or turn a blind eye to him being

assaulted.

167.    At all times relevant and material hereto, Defendants owed to the C.O. a duty to

separate persons who were assaulting others from the innocent young adults, once they

found out about the assaults, to be sure these persons were separated so similar instances

would not continue to occur.

168.    During all applicable periods of these assaults, including as outlined above, the

Defendants Corporation, including its employees and/or workers, including but not

limited to Defendants knew or should have known that C.O. was at risk of being abused.

169.    Despite the specific knowledge that C.O., who has developmental disabilities, had

such disabilities, should not have been left alone, Defendants did not monitor the young

Case ID: 240702013

adults in its care and/or even after it knew these assault(s) had occurred recently in the

past at the Defendants' facility to C.O. and other's.

170.    Defendants breached its duty to employ, train, or schedule sufficient staff to allow

the necessary supervision of C.O., despite the aforementioned knowledge of C.O.'s

disability.

171.    Defendants recklessly, grossly, willfully, and wantonly breached their

aforementioned duties including but not limited to:

> a. failure to monitor the young adults in their care;
>
> b. failure to be aware of the actions of the staff who were supposed to care
>
>   for the young adults;
>
> c. failure to monitor their staff;
>
> d. failure to create effective policies and procedures to protect the young
>
>   adults in their care;
>
> e. failure to enforce policies designed to protect the young adults in their
>
>   care;
>
> f. failure to follow all plans of correction, protocols, and similar
>
>   implemented prior to C.O.'s incident(s);
>
> g. failure to create effective policies and procedures to monitor their
>
>   employees;
>
> h. failure to enforce policies to monitor their employees;
>
> i. failure to conduct appropriate background checks on their
>
>   employees/agents;

j. failure monitor the video surveillance Defendants had that would have prevented this incident, and prevented further incidents;

k. failure to maintain such video surveillance for investigation after that would have prevented the further incidents to C.O.;

l. failure to properly document C.O.'s chart regarding such incidents;

m. failure to properly document C.O.'s body charge regarding such incidents;

n. failure to do reviews of C.O.'s chart that would have prevented this incident;

o. failure to do reviews of Defendants' employees to ensure they meet all appropriate standards;

p. failure for Defendants employees to report incidents of abuse by other employees;

q. failure for Defendants to not have a culture/environment that encouraged Defendants' employees to report incidents of abuse that would have prevented this incident, and further incidents;

r. failure to not terminate Defendants' employees that had such issues in their past, and allowed such employees to remain working with C.O.;

s. failure to follow all and any duties averred in this Complaint.

172.    Defendants and/or their employees, agents, and workers' actions and inactions were done in such a grossly negligent, negligent, outrageous, wanton, reckless and careless manner that it/he/she/they caused C.O to endure torture, torment, and abuse.

173.     On information and belief, Defendants grossly negligently, negligently, recklessly, deliberately, and/or consciously disregarded the serious risks and signs, and allowed C.O. to be subjected to the abuse outlined herein.

174.     On information and belief, the assault on C.O. was foreseeable.

175.     On information and belief, the assault on C.O. was preventable.

176.     On information and belief, the continued assault on C.O. was foreseeable and/or preventable.

177.     The actions and inactions of Defendants and all employees named herein and/or other workers were negligent, grossly negligent and/or reckless in light of the actual and/or constructive knowledge of the extreme danger and risk of abuse by the other residents.

178.     Defendants failed to adhere to C.O.'s individual plan by negligently, grossly negligently, knowingly, or acting with conscious disregard or reckless indifference in leaving Defendant(s) alone with others who may abuse him, and failing to train its employees and servants to provide proper methods to recognize, diagnose, or be aware of such an occurrence.

179.     On information and belief, the employees were not properly trained in how to recognize, or assist in handling a situation involving the abuse outlined herein.

180.     The Defendants' employees were not properly trained in how to recognize, or assist in redirecting, deescalating, and seeking support from other employees/supervisors.

181.     Defendants and its executives knew or should have known of all of the deficiencies C.O. was facing especially from all incidents that were/had occurred at the Defendants' facilities within the years prior to.

Case ID: 240702013

182.    Despite these executives knowing that based on some, most, and/or all of these deficiencies someone would be seriously injured they did absolutely nothing to prevent an incident(s) like the one(s) that occurred to C.O.

183.    It is believed and therefore averred that one, any, and/or all of the executives/ employees could have and/or had the specific authority, if they chose, to prevent the actions and inactions that led to the abuse of C.O.

184.    It is believed and therefore averred that one, any, and/or all executives/employees should have created adequate policies and procedures and/or enforced the policies and procedures in place which if they had done so would have prevented C.O. from being assaulted.

185.    Defendants failed to timely evaluate and implement proper supervision, of their employees.

186.    Defendants failed to properly train its employees, overworked its employees, and underpaid its employees, such that they were unprepared to care for all the young adults in its facility.

187.    The aforesaid incident was due solely to the grossly negligent, negligent conduct, careless conduct and/or reckless and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct of Defendants and in no way due to any negligent act or failure to act on the part of the C.O.

188.    The foregoing incident and all of the injuries and damages set forth hereinafter/heretofore sustained by the C.O are the direct and proximate result of the grossly negligent, negligent, careless, and/or reckless manner and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct in which the

Case ID: 240702013

Defendant(s) operated and/or actions and inactions, said negligence, carelessness, and/or recklessness includes, but is not limited to, the following:

a.  Failing to keep alert to the actions and inactions of its staff and clients;

b.  Failing to operate its business in accordance with reasonable standards for taking care of young adults with developmental disabilities;

c.  Failing to exercise the high degree of care required when accepting the responsibility for young adults;

d.  Operating the business in a manner endangering persons and with a careless disregard to the rights and safety of others;

e.  Failing to take proper precautions so as to avoid the incident(s) complained of herein;

f.  Carelessly supervising, watching, caring for the residence and specifically C.O.;

g.  Being inattentive and failing to maintain a sharp lookout over its employees and clients;

h.  Failure to use due care under the circumstances;

i.  Placing C.O. at risk of harm through their actions or inactions;

j.  Failure to only allow a person who was competent to supervise, watch, and care for C.O.;

k.  Failure to only hire employees who would do their job and duties in a reasonable and prudent manner;

l.  Failure to only hire employees who would follow the rules, regulations, laws, policies, and procedures;

Case ID: 240702013

m.  Failure to have policies and procedures in place to be sure its employees were qualified to do the job duties reasonably and safely so that residents, and specifically C.O., were not put in danger;

n.  Failure to have adequate policies and procedures in place regarding hiring, managing, safety, and inspection;

o.  Failure to have policies and procedures in place to ensure the Defendant's employees complied with all rules, regulations, laws, policies and procedures;

p.  Failure to adequately train, continuously train, and update its employees;

q.  Failure to have enough employees working and allowing, requiring, or mandating the employees that worked at the facility work dangerously long hours;

r.  Failure to properly respond to and correct the conditions that resulted in the abuse of C.O.;

s.  Failure to have random drug and alcohol checks on its employees to be sure they were not using drugs and/or alcohol while working;

t.  Failure to have the proper policies and or not having them reduced to writing;

u.  Failure to make sure its employees had the type and kind of qualifications and training to do reasonably, prudently and correctly do their job when these incidents occurred;

v.  Failure to have policies and procedures in place which would discover the non-reporting incidents where special needs residents were involved;

w.  Failure to have policies and procedure in place wherein Defendant would adequately and reasonably monitor C.O. around other staff;

Case ID: 240702013

x.  Failure to have appropriately trained staff to take adequate measures to help C.O. articulate his issues, and to contact the proper counsellors or authorities within an appropriate period of time;

y.  Failure to have inspected their facilities, homes, properties, employees in a reasonable prudent manner to be sure there was a safe environment for the special needs residents;

z.  Failure to operate the facility and/or instruct its employees to perform their duties pursuant to the laws of the Commonwealth of Pennsylvania and any and all Federal Statutes and Regulations including but not limited to, policies and procedures that were in place and/or that should have been in place;

aa. Failure to allow and/or not discover that the employee(s) that were supposed to be monitoring C.O. were inexperienced, lacked the skill and judgment, was not qualified to do his/her/their job in a safe, reasonable and/or prudent manner;

bb. Failure to conform to the requisite standards of care under the circumstances;

cc. Failure to timely seek necessary medical testing/care that made Plaintiff's injuries worse;

dd. Failing to relay full complete and adequate information to the state agencies;

ee. Failure to properly and adequately document Defendants' findings, beliefs, opinions, and similar documents;

ff. Placing C.O. at risk of harm through Defendant's actions and inaction;

gg. Failing to properly observe C.O.;

Case ID: 240702013

hh. Failing to take proper action once C.O. was found to have been assaulted and failure to train staff and/or have appropriate applicable policies and procedures in place to avoid this and other similar incidents from occurring;

ii. Failure of the Defendants to keep detailed records, logs, and notes outlining the details surrounding this incident;

jj. Failing to not violate any duties owed to Plaintiff including those set forth herein this complaint;

kk. Negligence per se;

ll. Violation of all and any duties delineated within this Complaint;

mm.     Failure to enforce the policies and/or procedures that were in place;

nn. Failure to formulate adequate policies and procedures for persons with developmental disabilities;

oo. Failure to adequately and reasonably oversee all employees;

pp. Failure to formulate, adopt and enforce adequate rules and policies to ensure quality care for those such as C.O.;

qq. Failing to have adequate and appropriate policies in place which would mandate reporting and assessment of residents who are involved in incidents;

rr. Failure to protect C.O. from risks throughout the facility, of which Defendants were or should have been aware, knowing that C.O. was unable to recognize the dangers himself.

189.     As a result of the aforesaid actions and inactions, C.O. lived day in and day out-enduring fear, physical injury, embarrassment, confusion, helplessness, assault, and

Case ID: 240702013

torture resulting in pain, suffering, moral degradation, and potentially irreparable emotional anguish.

190.    Aforementioned acts have left C.O. with serious and potentially irreparable physical and mental injuries.

191.    Aforementioned acts have left C.O. with a worsened psychological state and erased the great strides he has made over his lifetime.

192.    C.O. suffered significant pain, distress, suffering, and continues to suffer physical and psychological pain in the extended period of time that he endured assault, and social embarrassment as a direct and proximate result of the actions and/or inactions of Defendants, its employees and/or its other workers.

193.    As a result of the aforesaid incidents and injuries sustained, C.O. and his legal guardian, have incurred and will incur additional costs and expenses.

194.    As a result of the aforesaid accident and injuries sustained, C.O. was and/or will be forced to undergo psychological and medical treatment.

195.    As a result of the aforesaid accident and injuries sustained, C.O. will have to expend various and substantial sums of money for the medicine and medical attention to their great financial loss and damage.

196.    The actions of all Defendants, individually and by way of their agents, servants, workmen, employees and/or ostensible agents, as set forth in the proceeding paragraphs of this Complaint and incorporated herein by reference, were performed with: (a) a reckless indifference toward the rights of C.O., (b) a conscious indifference to the consequences of their actions; and (c) a reckless disregard for the welfare of the C.O. and for the safety of the C.O.

Case ID: 240702013

197.    The aforesaid acts, which are incorporated herein by reference as fully as though the same were herein set forth in detail, constituted outrageous conduct and resulted in an unreasonable risk of bodily harm to C.O. as a result of which the Plaintiff is entitled to punitive damages from the Defendants.

198.    As a result of the aforesaid acts of negligence, C.O. suffered and Defendant(s) are liable for but not limited to the following damages:

   a.  C.O.'s pain and suffering between the time of the initial injury until the point in the future which C.O. is no longer suffering.;

   b.  The effect this damage has on C.O.'s estimated future earning power;

   c.  C.O.'s other financial losses suffered as a result of his abuse;

   d.  C.O.'s loss of enjoyment of life, humiliation, scarring, and emotional distress;

   e.  Punitive Damages.

199.    C.O. claims damage for reimbursement including all past, current, and/or future wage loss, life care plan, hospital, medical, and psychological expenses incurred in connection therewith.

**WHEREFORE**, Plaintiff prays judgment against Defendants, and each of them, as follows:

   1.  For compensatory, consequential, general damages in a sum in excess of the jurisdictional/arbitration minimum of this court;

   2.  For reasonable medical, psychological, and related expenses;

   3.  For punitive damages, according to proof;

   4.  For interest prejudgment as allowed by law;

Case ID: 240702013

5.    For such other and further relief as this Court may deem equitable, just and proper.

Respectfully Submitted:
PISANCHYN LAW FIRM

By: _____  2-18-2024
Bradley D. Moyer, Esquire
I.D. 319281
524 Biden Street
Scranton, PA 18503

Case ID: 240702013

## ATTORNEY VERIFICATION

Bradley D. Moyer, Esquire verifies that he is the attorney for the Plaintiff in this litigation and that he is authorized to verify the facts set forth in the attached Civil Action Complaint. Bradley D. Moyer, Esquire, further verifies that the Plaintiff are outside of jurisdiction of this court, and could not be obtained within the time allowed for filing this pleading. Bradley D. Moyer, Esquire, further verifies that the statements of fact made in the foregoing Complaint are true and correct to the best of his information and belief and that the source of his information is his review of the file and from his investigation of the allegations contained herein and the law of this Commonwealth. If the foregoing contains averments which are inconsistent in fact, signer has been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but signer has knowledge or information sufficient to form a belief that one of them is true.

Bradley D. Moyer, Esquire, understands that false statements herein are subject to the penalties provided by law in 18 P.S. § 4904 relating to unsworn falsification to authorities.

_7-18-2024_

Bradley D. Moyer, Esquire

Case ID: 240702013